IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

TERRI URSINI,

    Plaintiff,

v.

US MEDISYS, LLC, a Michigan limited liability company,

    Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff, Terri Ursini ("Plaintiff") through her undersigned counsel, HKM Employment Attorneys, LLP, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the Colorado Wage Act, C.R.S. § 8-6-101 *et seq.* ("CWA"), as her Complaint and Jury Demand against the Defendant, US Medisys LLC ("Defendant"), a Michigan limited liability company, states as follows:

### NATURE OF THE CASE

1. The Plaintiff worked for the Defendant and its predecessor companies from 1993 until 2019. During 2021, the Plaintiff repeatedly challenged the Defendant's misclassification of its medical transcriptionists as independent contractors, telling the Defendant that its actions were unlawful because the Defendant was exercising a significant degree of control over the transcriptionists.

2. On January 27, 2022, the Defendant violated the FLSA by terminating the Plaintiff

for communicating her concerns regarding its misclassification of the medical transcriptionists. *See* 29 U.S.C. § 215(a)(3).

3. Prior to her termination, the Plaintiff earned 594 hours of vacation pay, which constituted "wages" or "compensation" under the CWA. *See* C.R.S. § 8-4-101(14)(a)(III) (defining "'[w]ages or compensation'" to include "[v]acation pay earned in accordance with the terms of any agreement'").

4. Upon terminating the Plaintiff, the Defendant refused to pay the Plaintiff her earned vacation pay, in blatant disregard for the requirements of the CWA. *See Nieto v. Clark's Mkt., Inc.*, 2021 CO 48, ¶ 19, 488 P.3d 1140, 1145.

5. The Plaintiff seeks back wages, back pay, liquidated damages, statutory penalties, reasonable attorney's fees and costs for the Defendant's violations of the FLSA and the CWA. *See* 29 U.S.C. § 216(b); C.R.S. §§ 8-4-109(3); 8-4-110(1).

**PARTIES**

6. The Plaintiff is a Colorado resident whose attorneys, HKM Employment Attorneys, LLP are located at 730 17th Street, Denver, Colorado 80202.

7. At the time of her wrongful termination, the Plaintiff was an "employee" of the Defendant, as defined by the CWA. *See* C.R.S. § 8-4-101(5).

8. The Defendant is a Michigan limited liability company that does business in Colorado as part of its health and medical industry. The Defendant is primarily engaged in the business of providing medical transcription for different clinics and hospitals.

9. At all times relevant to this Complaint, the Defendant was the Plaintiff's "employer," as defined by the CWA. *See* C.R.S. § 8-4-101(6); 7 C.C.R. 1103, Rule 1.6 (2021).

## JURISDICTION AND VENUE

10. The Plaintiff hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

11. This Court has subject matter jurisdiction over the Plaintiff's claims under the FLSA pursuant to 28 U.S.C. 1331 because those claims arise under federal law.

12. The Court may exercise supplemental jurisdiction over the Plaintiff's CWA claims because those claims are so related to the Plaintiff's FLSA claims that they form part of the same case or controversy under Article III of the United States Constitution.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

14. The Plaintiff hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

15. The Plaintiff was hired by a predecessor company of the Defendant, Valentine Transcription, in 1993.

16. In 2008, Cardus, Inc. purchased Valentine Transcription.

17. Cardus, Inc. eventually renamed its transcription side "US Medisys."

18. US Medisys, was purchased by Adept Solutions in July 2019.

19. As part of its purchase of US Medisys, the Defendant took on its predecessor's preexisting wage obligations to its employees, including its obligations to the Plaintiff.

20. Throughout her employment, the Plaintiff performed her job duties in accordance with the Defendant's and its predecessors' legitimate expectations.

21. At the time of her termination, the Plaintiff was entitled to a salary of $78,000.00 per year, and to vacation pay that accrued at a rate of $40.625 per hour.

22. On multiple occasions during 2019, the Defendant's Chief Financial Officer, Srujana Shilangani ("Shilangani") approached the Plaintiff to discuss the subject of her vacation pay. During each of these conversations, Shilangani told the Plaintiff that the company wanted to "start paying out" this vacation pay.

23. Despite Shilangani's representations, the Defendant did not ever pay the Plaintiff her earned vacation pay.

24. In an email dated December 2, 2021, Sridevi Mathi, the manager of the Defendant's Accounting Department, confirmed that the Plaintiff was entitled to 594 hours of vacation pay.

25. By the time of her termination, the Plaintiff was entitled to a total of 690 hours of vacation pay.

26. At all times relevant to this Complaint, the Defendant classified many or most of its medical transcriptionists as "independent contractors."

27. Based on its classification of the medical transcriptionists as independent contractors, it did not pay them overtime compensation at a rate of one and one-half times their regular rates of pay for all of the hours that they worked over 40 per week.

28. During 2021, the Plaintiff began to notice that despite classifying its medical transcriptionists as independent contractors, the Defendant was exercising a significant degree of control over those workers, and became concerned that the Defendant was violating the law in its conduct toward them.

29. On numerous occasions during 2021, Shilangani and the Defendant's President,

Siva Konatham ("Konatham"), told the Plaintiff that they wanted to implement set schedules for the medical transcriptionists. The Plaintiff responded by telling them that she did not believe that this would be legal.

30. In January 2022, the Defendant's Pathology Account Manager, Cheryl Redwine ("Redwine") sought to implement a policy/practice of requiring the medical transcriptionists to request time off in advance.

31. In a conversation with Redwine in January 2022, the Plaintiff informed the Defendant that they could not legally require independent contractors to request time off, and that they appeared to be treating the medical transcriptionists as employees.

32. On January 27, 2022, Shilangani sent an e-mail to the Plaintiff that she was "being terminated, effectively immediately."

33. Shilangani claimed that the Plaintiff violated "company policies and non-compete/confidentiality" by working for another company during the hours she was not working for the Defendant.

34. Shilangani's claim was and is nonsensical, because the Defendant did not have a policy prohibiting employees from moonlighting for other companies, the Plaintiff did not ever sign any noncompetition agreement, and the Plaintiff did not divulge any of the Defendant's confidential information to any third party or parties.

35. On January 27, 2022, the Plaintiff sent Shilangani and Konatham an e-mail demanding payment of the wages and compensation, including vacation pay, due to her under Colorado law within 24 hours of her termination.

36. The Defendant received the Plaintiff's demand, but has not tendered the wages and

compensation due to the Plaintiff.

37. At all times relevant to this Complaint, the Defendant knew or should have known that it was required to pay the Plaintiff her earned wages and compensation. Its failure to do so was therefore a willful violation of the CWA.

## COUNT I:

## RETALIATION IN VIOLATION OF THE FLSA

## 29 U.S.C. § 201 *et seq.*

38. The Plaintiff hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

39. At all times relevant to this Complaint, the Plaintiff was an "employee" subject to the protections of the FLSA. *See* 29 U.S.C. § 201(e).

40. At all times relevant to this Complaint, the Plaintiff was an "employer" and an "enterprise engaged in commerce," covered by the FLSA. *See* 29 U.S.C. §§ 201(d), (s)(1).

41. The FLSA prohibits retaliation, *i.e.*, the taking of materially adverse actions against any employee for opposing practices the employee reasonably believes to be a violation of the FLSA. 29 U.S.C. § 215(a)(3).

42. The Plaintiff engaged in protected activity under the FLSA when she repeatedly challenged the Defendant's misclassification of its employees in communications with the Defendant's management. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011) (holding that FLSA protects informal oral complaints to an employer).

43. The Defendant violated the FLSA by terminating the Plaintiff on January 27, 2022 because of her protected activity, including her communications with Shilangani and Konatham,

and her conversation with Redwine in January 2022.

44. Were it not for the Plaintiff's protected activity, the Defendant would not have terminated her employment. *See Bostock v. Clayton Cty., Georgia,* 140 S. Ct. 1731, 1739 (2020) (protected activity must be "a" but-for cause, not "the" but-for cause, of the adverse action).

45. Based on the Defendant's violation of the FLSA, it is liable for back wages, liquidated damages, reasonable attorney's fees and costs. *See* 29 U.S.C. § 216(b).

## COUNT II:
## WAGE THEFT IN VIOLATION OF THE COLORADO WAGE ACT
## C.R.S. § 8-4-101 *et seq.*

46. The Plaintiff hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

47. The CWA requires employers to timely pay all wages and compensation due to an employee. C.R.S. § 8-4-103.

48. The CWA further requires that an employer that terminates an employee pay all wages and compensation due to the employee "no later than twenty-four hours after the start of such employer's accounting unit's next regular workday." C.R.S. § 8-4-109(1)(a).

49. The Act defines wages and compensation to include "[v]acation pay earned in accordance with the terms of any agreement." C.R.S. § 8-4-101(14)(a)(III).

50. An employer may not refuse to pay earned vacation pay solely because an employee resigns her employment or is terminated. *See Nieto v. Clark's Mkt., Inc.*, 2021 CO 48, ¶ 19, 488 P.3d 1140, 1145.

51.     The Defendant violated the CWA by failing to pay the Plaintiff her earned vacation pay, totaling 690 hours at a rate of $40.625, or $28,031.25.

52.     The Plaintiff sought to remedy this violation through a demand for payment of wages sent on January 27, 2022, but the Defendant has refused to tender the wages owed.

53.     This Complaint constitutes a further demand for the payment of wages owed to the Plaintiff.

54.     Because the Defendant knew or should have known that it was required to pay the Plaintiff all of her earned wages and compensation, and failed to do so, the Defendant's violations were willful as a matter of law. *See* C.R.S. § 8-4-109(3)(c); C.R.S. § 8-4-122; *see also Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011) (wage violation is "willful" if the employer "either knew or showed reckless disregard for the matter of whether its conduct violated the statute").

55.     Accordingly, the Defendant is liable to the Plaintiff for unpaid wages and compensation of $28,031.25, statutory penalties under C.R.S. § 8-4-109(3)(b) of $19,640.63, additional statutory penalties under C.R.S. § 8-4-109(3)(c) of $9,820.31, based on the willfulness of its violations, and the Plaintiff's reasonable attorney's fees and costs incurred in this action. *See* C.R.S. § 8-4-110.

## PRAYER FOR RELIEF

For the reasons set forth above, the Plaintiff respectfully asks that the Court enter judgment for her and against the Defendant and award the Plaintiff:

   A. Back wages totaling $28,031.25;

   B. Statutory penalties totaling $29,460.94;

  C. Back pay in an amount to be determined at trial;

  D. Liquidated damages in an amount equal to the back pay awarded at trial;

  E. The Plaintiff's reasonable attorney's fees through the date of judgment;

  F. The Plaintiff's costs through the date of judgment;

  G. Post-judgment interest in an amount to be determined at trial; and

  H. All other and further relief that the Court deems to be equitable and just.

## JURY DEMAND

The Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted on this 29th day of March, 2022.

    **HKM EMPLOYMENT ATTORNEYS LLP**

    By: */s/ Adam M. Harrison*
    Adam M. Harrison
    Claire E. Hunter
    HKM Employment Attorneys LLP
    730 17th Street, Suite 750
    Denver, Colorado 80202
    720.255.0370
    aharrison@hkm.com
    chunter@hkm.com

    *Attorneys for Plaintiff*